UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2018 SEP -5 P 12: 44
US DISTRICT COURT
HARTFORD CT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:18CR187(RNC) |
| | : | |
| v. | : | VIOLATION: |
| | : | 18 U.S.C. § 1343 (Wire Fraud) |
| ROBERT J. BARRY | : | |

INFORMATION

The United States Attorney charges:

COUNT ONE
(Wire Fraud)

Background

1. In Connecticut, fees payable to an executor of an estate are not fixed by statute, but instead, subject to a reasonableness standard.

2. At all times relevant to the Information, the defendant ROBERT J. BARRY ("BARRY"), was the managing partner at Sturges & Mathes, a law firm located in Southbury, Connecticut. BARRY ran the trusts and estates practice at Sturges & Mathes.

3. At all times relevant to the Information, Victim 1 was a client of BARRY's and the Sturges & Mathes firm. Victim 1 died on or about March 1, 2014.

The Scheme and Artifice to Defraud

4. From at least as early as 2008 to approximately November 2015, the exact dates being unknown, in the District of Connecticut and elsewhere, BARRY did knowingly, willfully and intentionally devise and intend to devise, and participate in, a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, and by omissions of material facts.

5. The object of the scheme was for BARRY to enrich himself at the expense of certain of his clients (the "client-victims") and their beneficiaries by taking large, unearned fees from the client-victims' trusts and estates, including by providing false and misleading communications to his client-victims and their beneficiaries about the amounts of money held for them and available for distribution.

## Manner and Means

6. It was part of the scheme and artifice to defraud that BARRY prepared wills for clients in which he designated himself as executor of the client's estate upon the client's death.

7. It was part of the scheme and artifice to defraud that BARRY prepared trust agreements on behalf of clients describing the terms and conditions for how the client's assets would be managed in the event of the client's death and designating himself as the successor trustee in the event of the client's death or incapacity.

8. It was part of the scheme and artifice to defraud that BARRY, as successor trustee, gained control over bank accounts belonging to client-victims.

9. It was part of the scheme and artifice to defraud that BARRY directed members of the Sturges & Mathes staff to take funds which were not earned by the firm from various client-victims' accounts and transfer the funds to the Sturges & Mathes general bank account at Ion Bank, (the "Sturges & Mathes General Account") by preparing a check drawn on the client-victim's account payable to the Sturges & Mathes General Account.

10. It was part of the scheme and artifice to defraud that BARRY would and did maintain another bank account at Ion Bank (the "Sturges & Mathes Special Account") over which BARRY maintained access and control and which was used as an intermediate account between

the Sturges & Mathes General Account (into which unearned client-victim funds were deposited) and BARRY's personal bank account at TD Bank.

11. It was part of the scheme and artifice to defraud that BARRY wrote checks drawn on the Sturges & Mathes Special Account and either cashed the checks or deposited them into his TD Bank account.

12. It was part of the scheme to defraud that BARRY caused false and misleading statements to be sent to client-victims and their beneficiaries, falsely representing the amount of money that BARRY would take or had taken from their trusts or estates, and the amounts of money available for distribution, and omitting material information about this disposition of client-victims' assets.

13. For example, on or about May 5, 2015, BARRY caused a distribution letter with a $5,000,000 check to be sent to Victim 1's beneficiary claiming that the money represented a distribution of Victim 1's trust (which, along with a prior distribution of $2,000,000, represented the entire distribution), but failing to disclose that BARRY had taken significant unearned fees from Victim 1's estate, resulting in a diminution of the estate's value for distribution.

14. It was further part of the scheme to defraud that BARRY lied to the Internal Revenue Service in order to hide the excess fees that he had taken from Victim 1's estate.

### The Use of Interstate Wires

15. For the purpose of executing and attempting to execute the scheme and artifice to defraud, on or about April 9, 2014, in the District of Connecticut and elsewhere, BARRY did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce a total of $26,000 from Victim 1's account at Janney Montgomery Scott to the Sturges & Mathes Special Account by means of a check negotiated through the Federal Reserve system.

All in violation of Title 18, United States Code, Sections 1343 and 2.

UNITED STATES OF AMERICA

_____
JOHN H. DURHAM
UNITED STATES ATTORNEY

_____
SUSAN L. WINES
ASSISTANT UNITED STATES ATTORNEY